FILED
2014 Jan-09  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ALTEC CAPITAL SERVICES, | ) | |
| LLC d/b/a Equipment Finance | ) | |
| Partners, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:13-CV-1540-VEH** |
| | ) | |
| v. | ) | |
| | ) | |
| PREMIER EQUIPMENT RENTAL | ) | |
| & SALES, LLC, et al, | ) | |
| | | |
| **Defendants.** | | |

---

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

The defendants have filed a motion to dismiss this case for lack of personal jurisdiction or, alternatively, to transfer venue. Docs. 8, 15. They have also filed an accompanying legal memorandum. Doc. 9. The plaintiff (Altec) has filed a responsive opposition. Doc. 10. For the following reasons, the court will **DENY** the defendants' motion.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12 allows a party to assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). "As a general rule, courts

should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) (citations omitted).

The plaintiff "has the burden of establishing a prima facie case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006) (citation omitted). The plaintiff meets this burden if it "presents enough evidence to withstand a motion for directed verdict." *Id.* (quotation omitted). That is, the plaintiff must present "legally sufficient evidence . . . to create a genuine issue of material fact" on the jurisdictional issue. *Turner v. Regions Bank*, 770 F. Supp. 2d 1244, 1247 (M.D. Ala. 2011) (citations omitted).

When a "defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs*, 447 F.3d at 1360 (citation omitted). When a plaintiff's "complaint and supporting affidavits and documents conflict with the Defendants' affidavits," the court "must construe all reasonable inferences in favor of the plaintiff . . ." *Id* (citation omitted).

2

## STATEMENT OF THE CASE

### I.    Factual Background

With this standard in mind, the court summarizes the following basic facts regarding the case. Altec is a limited liability company that has its principal place of business in Birmingham, Alabama. Doc. 1 ¶ 1. Its sole member is Altec, Inc., an Alabama corporation with its principal place of business in Birmingham, Alabama. *Id.* One of the defendants, Premier Equipment Rental & Sales, LLC (Premier), is a Mississippi limited liability company that has its principal place of business in Mississippi. *Id.* ¶ 2. Its sole member is another defendant, Wayne Borries, who is a Mississippi citizen and resident. *Id.* ¶ 3. The final defendant, Southern Contractors, Inc. (Southern), is a Mississippi corporation that has its principal place of business in Mississippi. *Id.* ¶ 4.

Between early 2007 and late 2008, Altec and Premier entered into seven contracts under which Altec agreed to lease certain equipment to Premier. *Id.* ¶ 8; Doc. 1-1. The leases' terms ranged from three to four years in duration. Doc. 1 ¶ 8. To secure these leases, Mr. Borries executed an "Individual Personal Guaranty" agreement on or about January 30, 2007. *Id.* ¶ 9. Additionally, Mr. Borries and Southern together executed a "Continuing Guaranty Agreement" on or about January 31, 2007. *Id.* Under these guarantees, Mr. Borries and Southern "jointly and severally

guaranteed payment of all present and future debts of Premier including, without limitation, the Lease Payments and all other obligations of Premier." *Id.* The guarantees also obligated Mr. Borries and Southern to send their payments to Altec's office in Birmingham, Alabama. *Id.* ¶ 10. Moreover, Altec executed the aforementioned leases at its Birmingham office after Mr. Borries sent them there. Doc. 10 at 6-7 (citing Docs. 10-1, 10-2).[1] The leases each included a choice-of-law provision stating that the substantive law of Altec's principal place of business – i.e. Alabama – would govern their interpretation. *E.g.*, Doc. 1-1 at 4. The "Continuing Guaranty Agreement" (although apparently not the "Individual Personal Guaranty") contained a similar clause. Doc. 1-2 at 2-3.

Between August 2009 and October 2010, Mr. Borries, on behalf of Premier and Southern, contacted Altec at their Birmingham office on several occasions. Doc. 10 at 7. These communications included phone calls and e-mails. *Id.* They mainly

---

[1] The defendants dispute this point. In a sworn affidavit accompanying their motion, Mr. Borries claims that "One or more of the financing and/or lease agreements was executed by the Altec representative at my office in Mississippi." Doc. 9-1 ¶ 11. In its response, Altec "disputes that it ever executed any of the Leases or the Guarantees . . . in Mississippi based on the affidavits of Ralph B. Griswold and Paul Hinson attached hereto . . . and all Lease Documents were first executed by Borries prior to execution by Altec." Doc. 10 at 6-7 (citing Docs. 10-1, 10-2). Given that the court must construe all reasonable inferences in the plaintiff's favor when the Complaint and its supporting affidavits conflict with the defendants', the court credits the plaintiff's rendition here. More importantly – as will be shown below – the question of where the contracts were technically executed is immaterial to the court's conclusion that personal jurisdiction exists.

concerned the defendants' efforts to meet their lease and guarantee payments, some of which were overdue. *Id.* The parties' business relationship eventually deteriorated. By a letter dated July 26, 2013, Altec made final demand on the defendants' outstanding obligations. Doc. 1 ¶ 16; Doc. 1-4.

## II. Procedural Background

On August 21, 2013, Altec commenced this action by filing a Complaint. Doc. 1. The Complaint alleged that the defendants breached the lease and guarantee agreements and that they owed Altec on account stated. *Id.* ¶¶ 18-28. The defendants filed their first motion to dismiss for lack of jurisdiction (or for venue transfer) on September 19, 2013. Doc. 8. Altec responded in opposition on October 3, 2013. Doc. 10. The defendants filed an amended motion to correct their dismissal motion on October 10, 2013 (doc. 11), and simultaneously filed their reply to Altec (doc. 12). Altec filed an amended Complaint on the same day. Doc. 13. On October 24, 2013, the defendants re-filed their dismissal motion – i.e. the one presently before the court. Doc. 15. On the same day, the court mooted the defendants' first dismissal motion and their amended motion to correct it.[2]

---

[2]On January 3, 2014, Altec filed an unopposed motion asking this court for leave to amend its complaint (doc. 18), which the court granted by margin order entered on January 6, 2014. On January 7, 2014, Altec filed its Second Amended Complaint. Doc. 19. None of the allegations in the Second Amended Complaint alter the court's jurisdictional analysis.

**DISCUSSION**

This court has specific personal jurisdiction over the defendants. The defendants' interactions with Altec support this conclusion in several respects. First, the defendants voluntarily agreed to contracts containing Alabama choice-of-law clauses. Second, they made repeated payments under these contracts to Altec's office in Birmingham, Alabama. Third, they initiated communications with Altec's Birmingham office on several occasions. Last – in a broader sense – they formed a long-term contractual relationship with an Alabama company. This relationship was broad, ongoing, and without monetary limits. Altogether, these facts persuade this court that the defendants had sufficient contact with Alabama to establish personal jurisdiction. Further, exercising such jurisdiction would not be fundamentally unfair. Finally, venue is proper in this district because the events directly causing Altec to file this action occurred here.

## I.   Personal Jurisdiction Generally

### A.   *Two-Part Analysis*

In reviewing a challenge to personal jurisdiction, the court must undertake a two-part analysis. The court must:

- first, assess its jurisdiction under the state long-arm statute; and then

- determine whether jurisdiction comports with the Due Process Clause

6

of the Fourteenth Amendment.

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855–56 (11th Cir. 1990) (citations omitted). Alabama's long-arm statute aligns with federal constitutional due process. Ala. R. Civ. P. 4.2(b); *Sieber v. Campbell,* 810 So. 2d 641, 644 (Ala. 2001) (citations omitted) ("Rule 4.2 extends the personal jurisdiction of Alabama courts to the limits of due process under the federal constitution and the Alabama constitution."). The court must thus only undertake one analysis, the due-process inquiry. That inquiry itself requires the court to find that two conditions have been met:

- The defendant must have sufficient minimum contacts with the forum State; and

- the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."

*Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations omitted).

### B.   *Two Types of Personal Jurisdiction*

There are two types of personal jurisdiction: "general" and "specific." There is general personal jurisdiction over a party when "the cause of action does not arise out of . . . the [party's] activities in the forum State," but there are "continuous and systematic" contacts between the two. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 (1984) (footnote and quotation omitted). Specific

7

jurisdiction is based on the party's contacts with the forum State that are related to the cause of action. *Id.* at 414 n.8 (citation omitted). In this case, Altec does not maintain that the defendants have had general contacts with Alabama unrelated to this lawsuit. Rather, it asserts that – in the course of their business relationship – the defendants have had sufficient contacts with Alabama to justify specific personal jurisdiction. Doc. 10 at 8-12. Thus, the only issue the court will consider is whether asserting specific personal jurisdiction over the defendants comports with due process.

### C.    Minimum Contacts

For specific personal jurisdiction, the contacts at issue must satisfy the "minimum contacts" test. This test involves three criteria:

- First, the contacts must be related to the plaintiff's cause of action or have given rise to it.

- Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.

- Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there.

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996) (citation omitted).

### D.    Fair Play and Substantial Justice

"Once it has been decided that a defendant purposefully established minimum

8

contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320). Under this analysis, a court may consider the following relevant factors:

- the burden on the defendant;

- the forum State's interest in adjudicating the dispute;

- the plaintiff's interest in obtaining convenient and effective relief;

- the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

- the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Sometimes these considerations may establish personal jurisdiction when the defendant's "minimum contacts" with the forum State are relatively weak. *Id.* (citations omitted). Conversely, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

## II.    This Court Has Specific Personal Jurisdiction Over the Defendants.

### A.   The defendants had "minimum contacts" with Alabama because they purposely directed their Altec dealings toward Alabama.

In their motion to dismiss, the defendants argue that this court lacks specific personal jurisdiction over them because they never "purposefully directed" their actions toward Alabama in their dealings with Altec. Doc. 9 at 7-12; *see also Burger King*, 471 U.S. at 472 ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . .") (footnote and quotation omitted). In support, the defendants file an affidavit sworn by Mr. Borries that states the following:

- Altec initiated the business relationship by approaching Mr. Borries at a trade show in Las Vegas, Nevada.

- After Mr. Borries returned to Misssissippi, Altec contacted him and later visited him (in Mississippi) to solicit business.

- The parties agreed that all paperwork, contracts, etc. would be either sent or hand delivered to Mississippi for Mr. Borries to execute.

- Altec executed one or more of the financing and/or lease agreements at Mr. Borries's Mississippi office.

- Neither Mr. Borries, nor any Premier or Southern representative, has ever traveled to Alabama in furtherance of the agreements formed with Altec (or in furtherance of any general business of theirs).

- Each piece of equipment that was the subject of the agreements was purchased outside of Alabama, was delivered to Premier in Mississippi,

10

and was used for projects outside of Alabama.

Doc. 9-1 ¶¶ 10-16. Given these facts, the defendants maintain that Altec has not illustrated sufficient "minimum contacts" between the defendants and Alabama.

This is incorrect. First (and foremost), the defendants signed contracts with Altec containing provisions explicitly selecting Alabama law as controlling in any interpretive dispute. This fact greatly supports the existence of "minimum contacts." At the very least, the defendants' consent to the provisions qualifies as "purposeful availment of the privilege of conducting activities within [Alabama], thereby invoking the benefits and protections of its laws." *Sculptchair*, 94 F.3d at 631; *see also Burger King*, 471 U.S. at 482 ("Nothing in our cases, however, suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes.") (emphasis in original) (internal quotation marks omitted). And, importantly, the defendants should have foreseen that this clause might result in them being sued in Alabama.[3]

The defendants' other material contacts with Alabama reinforce this conclusion. First, they formed a contractual relationship with an Alabama company

---

[3]Notably, the defendants do not devote any part of their motion to addressing what, if any, relevance the Alabama choice-of-law provisions in their agreements with Altec bear on their jurisdictional argument.

whose sole member was an Alabama corporation. This relationship was – as Altec aptly characterizes it – continuous in nature, without monetary limits, broad in its terms, and suggestive of an ongoing relationship. Doc. 10 at 12. That is, it did not involve a one-time transaction. Along with the choice-of-law clauses cited above, the defendants could have reasonably predicted that they might be haled into an Alabama court over any dispute.

Further, the defendants agreed to – and did – send their lease and guaranty payments to Altec's Birmingham office. *See Daily Access Corp. v. Gaedeke Holdings, Ltd.*, CIV.A. 12-00217-KD-B, 2012 WL 6728051, at *5 (S.D. Ala. Dec. 7, 2012), *report and recommendation adopted*, CIV.A. 12-0217-KD-B, 2012 WL 6728061 (S.D. Ala. Dec. 28, 2012) (finding lack of jurisdiction in Alabama because, among other reasons, parties' agreement selected Texas law as governing and because plaintiff mailed contract payments to defendant in Texas). Last, Mr. Borries – representing all defendants – directed several communications to Altec's Birmingham office from August 2009 to October 2010 in which he discussed various facets of their ongoing contractual relationship. *See* Doc. 10-3 (sworn affidavit by Rivers Collum, manager of credit/collections with Altec, describing these communications).While none of these facts might be individually determinative, together they show that the defendants purposely directed their business activities

with Altec toward Alabama. This is sufficient to establish minimum contacts.[4]

**B.** ***Exercising jurisdiction over the defendants would not offend "traditional notions of fair play and substantial justice."***

The court has determined that the defendants purposely directed their business activities toward Alabama. In order to defeat personal jurisdiction despite this finding, the defendants must make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476 .

They have not done so here. In fact, they do not even claim in their motion that litigation in this district would significantly burden them. While forcing any party to travel to another state to defend themselves is an inconvenience, "modern methods of transportation and communication have significantly ameliorated its burden." *Sculptchair*, 94 F.3d at 632 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). This insight applies even more so in this case, as Mississippi (where the

---

[4]The defendants heavily emphasize that (1) they were never physically present in Alabama during the duration of their business relationship with Altec, and (2) Altec initiated the relationship. *E.g.*, Doc 9 at 3-4, 8, 11; Doc. 9-1 ¶¶ 4-11, 13. Neither fact alters this court's conclusion that personal jurisdiction exists. First, "[a] physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident." *Sieber*, 810 So. 2d at 644 (citation omitted). Second, which party initiated the business relationship, while relevant, is not dispositive. *See Corporate Waste Alternatives, Inc. v. McLane Cumberland, Inc.*, 896 So. 2d 410, 415 n.2 (Ala. 2004) ("[W]hile it is true that it is '[o]f particular relevance . . . whether the *plaintiff initiated* the sale or contact' . . . 'that fact is not controlling.'") (emphasis in original) (quotations omitted).

defendants reside) abuts Alabama. *Cf. Turner*, 770 F. Supp. 2d at 1252 ("As [the defendant] is located in nearby Florida, it is not a heavy burden for its representatives to travel to Alabama, especially since modern methods of communication have greatly reduced the expense and amount of actual travel require of out-of-state defendants.") (citation omitted). Finally, Alabama has a distinct interest in adjudicating a dispute involving one of its residents who claims it has been wronged. And Altec, as the plaintiff, has such an interest in "obtaining convenient and effective relief." In short, the court finds that exercising personal jurisdiction over the defendants would not offend "traditional notions of fair play and substantial justice."

## III.   Venue Is Proper in the Northern District of Alabama.

The defendants alternatively argue that venue is improper in this district. Under 28 U.S.C. § 1406(a) and § 1391(b), they ask this court to transfer the action to the U.S. District Court for the Southern District of Mississippi. Section 1406(a) states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Under § 1391(b), venue is proper in:

(1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)   a judicial district in which a substantial part of the events or omissions

14

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Under § 1391(b)(1), the defendants argue that the Southern District of Mississippi is the *only* proper venue. Doc. 8 ¶ 7.

This assertion is wrong because "a substantial part of the events or omissions giving rise" to Altec's claims occurred in the Northern District of Alabama. 28 U.S.C. § 1391(b)(2). In determining whether events or omissions support venue under this provision, "[o]nly the events that directly give rise to a claim are relevant." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). More specifically, a court assessing proper venue should consider "only those acts and omissions that have a close nexus to the wrong." *Id.*

This language narrows which of this case's facts are relevant (and irrelevant) for venue purposes. As shown above, in the course of performing under the contracts, the defendants sent their payments to Altec's Birmingham office. The defendants concede this fact – although they attempt to downplay it by emphasizing that the contracts were "presented" in Mississippi, executed in Mississippi, and were otherwise performed (via delivery of the cranes) in Mississippi . Doc. 9 at 16. All of

these facts may be true. However, they are not the wrongful "events or omissions" giving rise to Altec's claims – those would be the contract breach and the events leading up to it.

Altec claims that the defendants breached the contracts by failing to send the necessary payments to their Birmingham office. In other words, the defendants' alleged failure to pay Altec the prescribed contractual amounts in Birmingham has the "close[st] nexus to the wrong" in this action. *Jenkins Brick*, 321 F.3d at 1372. Given this fact, venue is also proper in the Northern District of Alabama. *See id.* at 1371 (observing that the venue statute "contemplates some cases in which venue will be proper in two or more districts").

## CONCLUSION

Accordingly, the defendants' Motion is **DENIED WITHOUT PREJUDICE**.[5]

**DONE** and **ORDERED** this 9th day of January, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[5]All parties should note the following: "[A] denial of a . . . motion to dismiss for want of personal jurisdiction is interlocutory and preliminary only." *Ex parte Reindel*, 963 So. 2d 614, 624 (Ala. 2007) (quoting *Ex parte McInnis*, 820 So. 2d 795, 798 (Ala. 2001)). "After such a denial, the continuation of personal jurisdiction over a defendant who appropriately persists in challenging it in [an] answer to the complaint and by motion for summary judgment or at trial depends on the introduction of substantial evidence to prove the . . . jurisdictional allegations in the . . . complaint." *Id.*

16